Welcome to the court. Even small groups are welcome. We have three cases on the calendar this morning. A patent case from the district court which will be argued into government employee cases submitted in the brief that will not be argued. First case is Lawler, a manufacturing company v. Bradley and Klein, 2009-1390. Mr. Turner. Good morning, your honor. May it please the court. This is of course the second oral argument before this court in this case in as many years. The court decided the first appeal in 2008. The issue then was whether Bradley was in default, whether it had breached the license agreement between Lawler and Bradley for failing to pay the correct royalties on in combination sales. Lawler had audited Bradley. It had sent notice demanding payment based on the audit and Bradley had shouted back no default. We are not in default. We refuse to change our calculation of royalty method and Bradley did not pay. It did not pay on the combination sales. It continued to calculate royalties on the same way. These and other default issues were tried to the district court in 2007. An evidentiary hearing and the district court ruled no breach. This court reversed that decision, confirmed Bradley's default on the license agreement and remanded to the district court for determination of royalties due and of the termination question which had been in play at the time in 2007. So on remand, Lawler in July of 2008 filed a motion with the district court and said we want to enforce the termination notice from December 2005 and also... You didn't send a termination letter, right? And on remand in 2008, we filed a motion. There was also... The letter had been in effect since December 2005, effective January 2006. We also asked the court to enforce the consent judgment. At the time, of course, back in 98 when this case started, it percolated on through an injunction. There was a consent judgment and the license agreement and without the license agreement, of course, under the consent judgment, Bradley could not... The district court held that you failed to notify Bradley of intent to terminate the license agreement for failure to pay royalties, right? It did. That was the ruling, Judge, that the notice was not specific. Why was the court wrong? Because section 8.1 and 8.2 of the license agreement do not terminate. Well, why couldn't the court infer the requirement under the circumstances of this contract where there had been a prior termination on the marking issue? And so why couldn't the court infer that when you've got different issues, there has to be a kind of specificity so that the other party understands what's going on? Well, two reasons I would suggest, Your Honor. One is that the agreement does not call for that. The court is unable under contract law in Indiana under the cases we cited to add provisions to a contract and say you were required in your notice of intent to terminate to do this. And Bradley actually agrees in this appeal. Would that be adding a provision or interpreting a provision? I think it would be adding a provision. And there's good reasons for that. The second reason I would give to you is that there is good reason in contract. Well, aren't they entitled to know why the agreement is being terminated? After all, there was another issue before. You terminated on another issue. There were a lot of issues, yes. Well, that's just underlining the point. They are entitled to know in what measure a party says you are in default. And that's why the agreement I would suggest to you says that here is the default we are saying you made, Bradley. Two kinds under the license agreement. One would be a payment issue in which law is required to say you haven't paid us the right amount. We did that. A second kind would be any other kind of default, in which case specificity is required. Good reason for that because the party needs to know how do I fix it? How do I cure it? Then the default is in existence. And as Judge McKinney found, there was no lack of clarity about this brief. In the case of a failure to pay default, which is what you're urging here, what degree, what kind of notice does the what does the licensee have to be told under 8.1 in the case of a failure to pay royalty or an underpayment of royalty default? Well, there are two kinds of notification in the agreement. One is if an audit takes place and the auditor provides its findings then Bradley is required to pay within 30 days of that time. The other kind is if Lawler provides notice, it's under 5.3, of a failure to pay proper royalties, then 15 days later Bradley is to pay. And that is defined to be an event of default. If that notice of request, it says request even. But doesn't the event of default as specified in the agreement have to be identified, i.e. a reason? The non-payment has to be stated under 5.3 to Bradley. When do you say you gave Bradley notice of underpayment of royalties or failure to pay royalties? December 22, 2003. In the letter, it's at appendix 292. That does not read like a notice of default. It reads like negotiation. It is a demand for payment. The word demand for payment is there. It's not a notice of termination. No, it's not a notice of termination. That's not our contention. This was the notice of non-payment, notice of demand for payment of proper royalties. But didn't Judge Schall ask you what was the notice of termination? I apologize. I thought Judge Schall asked about notice of default. Well, I guess they're kind of maybe melded together. You point to the December 22 letter, but then in that same letter, you say that in the last paragraph, all of these matters need to be addressed and resolved, one of these matters being the royalty issue, or law will have no choice but to resort to the default and termination provisions of the license agreement. That suggests that you're going the 5.4 route, you're presenting them with the KPMG report, and in that situation, they have to pay within 30 days. But then you're saying, if you don't pay within 30 days, we are going to have to resort to the default termination provisions. Certainly the termination, it does say what it says, I agree with you. So one reading this would say, okay, they've said if they don't pay in 30 days, pursuant to the 5.4 notice, etc., Bradley is going to, Mauler is going to proceed to default. And then we have after that, this dialogue between, I don't know, I guess February of 2004 and June of 2004, back and forth, Lawler saying the royalties do, Bradley coming back and saying no for various reasons. But then where do we see Lawler coming forward and saying, I terminate, as it said it would do in the last paragraph of the December 22 letter? We see that in the December 2005 letter. But that letter, though, is specifically directed to the marking issue that was raised in August of 2005. It discusses that rather extensively, but it also refers to... If it says more than that, I would respect your honor. Oh, it does. It does. There's no question, but it pinpoints that as the notice for termination. Then it goes on to say, this doesn't absolve you of your obligation to pay, and so forth. It does make reference to termination for the five-year history of difficulties, which was an extensive list in the last paragraph, and it refers, including the royalty under payments, and that was an issue. It certainly was not saying, in any way, we are not terminating because of these other defaults. Let me ask you a question on that, because this is central, at least as I view the case, to the validity or non-invalidity of the district court's analysis. You say that there's nothing in 8.1 that requires specificity of the reason for termination, and I take your point. But suppose that... Here, we have something other than simply a letter which says, we terminate without explanation. We have a letter that says, we terminate for reason X, in this case, marking. Suppose that the letter... I know this isn't what the letter says, but suppose the letter had said, we terminate for marking problems, not for lack of payment of royalties. Would you think that would be a valid termination letter under 8.1 for royalties? I think that it would be, because the contract itself states notice of intent to terminate. That's what it says. Of course, that isn't our case, but I believe it would be, actually, because then the mechanism, all of the machinery of the court would be called into play to decide, is this in existence or not? And as we've seen, all of these issues would have been litigated. It certainly is not what our letter, what the Lawlor letter said, because there had been, as Judge McKinney found, extensive conversation about this, especially on the royalty payment. And I wanted to come back to... Well, I think I understand your position on that. But let me ask you another question that goes to the December 22, 2003 letter and the relationship between Section 5.4 and 8.1 of the agreement. In your view, if you have a situation that arises under the application of the right under 5.3 to have an accounting, and the result of the accounting is a finding of an obligation, a past due royalty obligation, 5.4 says, okay, when that happens, the licensee has an obligation to make payment plus interest within 30 days. Is it your view that a letter sent on completion of the accounting, which says, you owe us this money, pay it within 30 days, invoking Section 5.4 rights, is a notice of default of the sort that's referenced in 8.1? I'm glad you asked that. That was the point I was going to come back to on Judge Schall's question, because there is a provision that says, in 5.3, if the auditor makes this conclusion that it's provided to Bradley, they must pay within 30 days. That would not be a notice of default, in my opinion, but under 8.1, this is why Lawlor sent the December 2003 letter, 8.1 says, the failure of Bradley or an affiliate to pay royalties when due upon the expiration of 15 days after receipt of a written notice from Lawlor requesting payment. That's what's required of Lawlor. That's what we did. Let me make my question clearer, because it's really a yes or no question. Okay, I'm sorry. I like either a yes or a no. I apologize. That's all right. What I'm looking to you for is an answer to the question of whether I'm the licensor, I have gotten a report from the auditor that says that there are back royalties due, and I send a letter and I say there are back royalties due plus interest, so send me the money within 30 days. Is that a qualifying notice of default within the meaning of 8.1, if I say nothing more? Yes. It is, which means, and this is why I have a problem with that construction of the contract, that means that under 8.1, even though 5.4 gives the licensee 30 days to make a payment, that under 8.1, halfway through that 30-day period, you could come in and terminate. Is that your reading of the contract? The contract has… Yes or no?  Not quite. Okay. I'm sorry. I think a judge would have to resolve a bit of incongruity between those two notice provisions, but the point I'm making to you is… Well, that's an important incongruity, it seems to me, because that's really close to this case. Well… Because if… Let me carry this thinking through to the final stage. Yes. If, suppose, that a court were to construe this contract to say that if you were invoked to the 5.3, 5.4 process, that the money is not actually due here under, which is the language used in 8.1, until the expiration of the 30 days, that's a pretty sensible construction of the two clauses together, it seems to me, and if that's true, then this letter sent at the beginning of the 30-day period was not a default letter. I would suggest that functionally it works this way, that the intent of the agreement, it seems to be from its language, that under 5.3, the auditor produces results, it is obligated to send the results to both parties. That starts the clock on a compliance issue with the contract. You know, either Bradley pays or it does not. It elevates to a default issue if Lawler sends the notice of default under 8.1, which is what it did. Even if that letter is sent in advance of the 30-day period? I believe it puts Bradley on the horns of the dilemma of a default, because if it had taken the position as it did, we are not going to pay, we are refusing to pay no matter what this auditor says, which is what Bradley said in the record, then it is an event of default. I would suggest that's what the district court would have found if that issue had been presented. And this, as Judge McKinney found, we continue to provide, and what we're really talking about is the adequacy then of the notice of termination, which then gets to the adequacy of the notice of default, which is, I mean, Judge McKinney characterized this letter as the beginning of a conversation. And if it's true that 5.3 and 5.4, in connection with this letter which says, if we can't resolve this, then we'll have to move to 8.1, if it's true that that letter is fairly characterizable as not an invocation of rights under the default and termination clause, then where is your default notice? If one construed the contract that way, then we would look to, and remember it requires 8.1, a request for payment. That happened, and these are collected at page 13 of our reply brief, that happened with additional communications in the conversation with Lawler, we want you to pay, we want you to pay, after the 30 days. That continued. So, and Bradley never paid. It said we won't. And then what did Lawler do? It went to the district court and filed a 35-page brief that said, we want to terminate because of all these issues, yes, but including the royalty payment. This is the February 06 filing? Yes. So that there were continuous requests for payment that were made to Bradley. And when did you, you said in the December 22 letter that if there was not a payment forthcoming, that Lawler would resort to the default determination, the default and termination provisions of the license agreement. Yes, sir. When did Lawler, in your view, resort to the default and termination provisions of the license agreement with respect to a failure to pay royalties? It began resorting to them with the December 22, 2003 letter. It continued to do so with its continuous notices to Bradley that it had not paid. But you've said all along, though, it was, but isn't it, you said it's the December 20 letter, right? And this was, yes, December 22, 2003 letter written by my client. No, the December 2005 letter. Oh, with the notice of termination? Yes. Is that where, I mean, I understood that you were saying in the briefs that it's that letter where you invoke the default termination provisions. That's the first time Lawler gave notice of a termination. Yes. That's right. And this was a... Because you said that then it was terminated on January 19th of 06. Yes, sir. That's right. And if there were any doubt about the sufficiency of the termination notice, then the brief comes after that in February of 06, which is an additional notice of termination that did not respond to on that. Yes. Mr. Turner, we've consumed your time. With questions, we'll give you three minutes back for rebuttal. Thank you. In the meantime, let's hear from Mr. Grossman. Thank you. Good morning. May it please the court, there are three reasons why this court can affirm the district court's opinion. The first reason is that there's no notice of default. The second reason is that there's no event of default. And the third reason is that Lawler waived any default which may have occurred. And the first reason, the no notice of default. The questions of the panel this morning on the letter of December 22nd, 03, is the way that Bradley indicates that... and Lawler's responses indicates that Lawler intends for that to be a notice of default. Bradley's position, I think consistent with the district court's position, it was not a notice of default. The court referred to it as the start of a conversation. But more importantly, in the district court's opinion, he said it's a start of a conversation because that's what the agreement contemplated. The district court understood this agreement. The district court brokered this agreement. It was reached under the mediation program of the district court. They were involved in its creation. And the procedures are quite different. The Section 5 procedure is not a default procedure. Okay. But the Section 5 procedure was invoked at minimum by the December 22nd, 2003 letter, correct? Yes. All right. And 30 days passed. And at the end of 30 days, Bradley decided not to pay the money and continued not to pay the money that Lawler contended was due pursuant to the accounting, correct? That's not correct. I think within that 30 days, Bradley responded with its letter of January. Yeah, yeah, but you didn't pay the money. That was my question. Well, we did because in that letter of January 1504, we, Mr. Turner. You said that you'd already prepaid. We had prepaid. They had the money. And there were no preconditions on it. It was not an escrow account. It was $300,000 given to Lawler on day one of signing that was free for them to use for any reason whatsoever. And there was no need for Bradley to authorize or do anything. Throughout that period of the prepayment, we never had to, I would say, you're now authorized to use X amount of our prepayment. They had the full amount that they could use from day one. Okay. Now, in June of 2004, Lawler sends a letter to Bradley saying the demand made in the December 22nd letter stands. Yes. Why isn't that, under 8.1, the requisite request for payment? There was only one demand made in the December 22nd 03 letter. When you read that letter carefully, Lawler says there are a few things that are there. We owe them royalties for repair parts. We owe them royalties for in combination. We owe them money for the auditor's report and that they raised the marking issue. They used the word demand in the 2003 letter, the December 03 letter, only with respect to the auditor's fee. Well, they do say it with respect to the auditor's fee, and that's in the last line or a second paragraph. But I see the word demands in the next to last line of the preceding paragraph with respect to royalties. In the 2003 letter, right? Right. Lawler demands that Bradley pay additional royalties of $22,000 plus interest. So that's two uses of the word demand, unless you are construing it as a different word because it has an S at the end. No. And we responded to that saying we've paid the money. Lawler came back and said we're repeating our demand singular in the 04 letter, the June 04 letter. So you're construing the 04 letter as being not a reference to both demands that are made in the 2003 letter because the June letter said demand? I think in that June 04 letter they said demand, we're repeating our demand. The demand in the 03 letter was for marking auditor's fees and royalties. And royalties. Bradley's position was that we did exactly as Lawler asked us to do in the 03 letter. They said either address and resolve the auditor's report, which we didn't have at that point. It wasn't sent to us. And our letter of 03 makes that very clear. When you look at our letter of January 15, 04, which is the appendix 294 to 296, after we explain that we think we're complying with marking as required by the law, we prepaid all the royalties. So even if you're right, even if your auditor is correct about repair parts and in combination, you already have the money. And then we said at the end of that 04 letter, this confirms that Bradley is current with all obligations under the agreement and that no further action appears to be required by Bradley at this time. Then we put in the parenthetical, which Lawler has emphasized to say that to assure our understanding is Bradley is not in default under the license agreement. Well, that's your position. It wasn't their position. And the question is, when they stated their position in June, for example, was that a request for payment of the royalties? And you gave a long answer, which I'm not sure explains, to my satisfaction at least, why it was that doesn't count as a request for payment. We didn't understand it to be a request for payment. And I think Lawler didn't allege that it's a request for payment because in the Lawler gray brief on page 13, their reply brief, they point out that Bradley is correct in its position in referencing only one notice of default in its opening brief. And that's the notice that was sent in December of 03. They never argue that the letter of 04, the Lawler letter of 04, was also a request for payment of royalties. I agree with you that the letter says that they repeat their demand singular. But that demand, at that point, the discussion was evolving into just a demand on marking and audit fees. Did we owe them the auditor's fee? And were we going to properly mark? Because all of these multiple notices, they keep referring to multiple notices of default. The one notice of default is the letter of December 22nd of 03, which we think isn't a notice of default at all. It's the start of what the agreement contemplated in these different procedures. The Section 5 procedure is not a termination for default. It started the 30-day 5.4 period, right? It did. And we responded within the 30 days. And what we said was, we don't think we owe you money. But even if we do, you've already got it. So you've got it in our account. There is no question that there was more than enough money in our prepaid royalty when we signed the license agreement to cover any amounts that were due for the only years in question were 2001 and 2002. Let me come back to your argument that they waived any contention that there was more than one notice of default. In their opening brief at page 5, they say, Lohler issued multiple notices of default to Bradley. Now, where in their reply brief do they withdraw that allegation? On page 13 of their reply brief, under Section C, the first sentence said, Bradley is correct that Lohler referenced only one notice of default in its opening brief. Now, in its reply brief, it also goes on to try and say, because we challenged them in our brief to say, what are all these multiple notices of default that you keep talking about? And on, I think it's page 6 of their reply brief, they cite to what they argue are the multiple notices of default. Well, the one notice of default is the letter of December 03. The second notice of default that they cite is Appendix 297. Your argument seems to be that they've waived the contention that they can look to other notices of default by virtue of withdrawing that allegation in their reply brief. But on the very next page of the reply brief, they say, well, Bradley plainly recognized that Lohler had provided multiple notices and claims of default. So they seem to be continuing to contend that there were multiple claims of default. They contend that, but what it's important to do is look at what those notices are. They cite them, Appendix 297 on page 6 of their reply brief. So there's the letter of 2003, which is not a notice of default at all. It's a notice about an auditor's report. The problem is they never sent the copy of the auditor's report. Our letter of January 1504, which is Appendix 294 to 296, points out that we don't have the auditor's report. We don't really understand how they could reach this conclusion, but let us reply as best we can to your letter. And we went through the reasons in our January 1404 letter, the Appendix 294 to 296 letter, and we said, could you please send us a copy of the auditor's report? Well, the document that they cite as another multiple notice of default, the 297 document, is a copy of the auditor's report that they sent us. And then we write back to them and say, the copy of the auditor's report that you sent us is incomplete. It's missing pages. And they sent us a corrected copy of the auditor's report. Mr. Grossman, we've been talking mostly about notice of default. What about notice of termination? The notice of termination is there. Lawler alleges it's that letter of December 05. The problem with the notice of termination is exactly as the district court characterized it, that a notice of termination requires certain prerequisites. The license agreement is very clear. The district court outlined what those requirements are in Section 8.1. It requires a notice of default, failure to cure within the period of cure, creating an event of default, and then a notice of termination. The problem that Lawler has is that they never met the prerequisites for a notice of termination, that there was never a notice of default. And they're clearly coming back to the notice of default as to the reason that the notice of termination was invalid. Well, that's certainly a key reason why the notice of termination was invalid. We're not contending, as I understand it, that as the district court held, that the notice of termination had to specify the reasons for the termination. Right. We are not contending that the notice had to specify reasons, but I don't think the district court said that. The district court said that precisely what they said is that after they outlined the procedures, they stated the conclusion that it's on Appendix Page 6, the court has concluded that Lawler did not properly notice termination. And that's absolutely correct, because a proper notice of termination requires the three prerequisites. But again, there's a different sentence that seems to me shed even more light on this question than the one you just read, which is on Page 5, second full paragraph. At no time prior to the Federal Circuit's decision did Lawler send a notice of termination citing failure to pay royalties as the reason for the termination. So the court seemed to attach great significance to the citation of the failure to pay royalties as the reason that the termination letter was invalid. There is some significance, because there needs to be a link between a notice of termination and the other prerequisites. You can't send a notice of default for marking, and then send a notice of termination, which we agree doesn't have to specify any reasons. And I don't think the court read into it any requirement that it specify reasons. But the notice of termination must be linked back to the other prerequisites. It has to, so unless there is a... Linked back explicitly? Notice of, no, but there has to be a, the prerequisites have to exist. And in this case, they didn't exist. Well, but then you're going back to the question of whether there was a proper notice of default. Well, and our point is there was no proper notice. Well, I understand, but my question to you before was, aren't you really predicating your argument as to the invalidity of the notice of termination on your argument as to the invalidity of the notice of default? And you said no, and then... Well, I think it's... It really is... I see it as a continuum, but more precisely, the reason why the termination wasn't effective on the notice of default issue is because there wasn't a notice of default. The reason why the termination letter wasn't effective also is because we had prepaid the royalties. Now, one of the things that Lawler said in their reply brief is that their only challenge to the prepayment, there's no question that we paid them $300,000.  to cover all of the royalties due for 2001 and 2002 under any auditor's theory of arithmetic. Their only challenge was we didn't raise it in the district court, and that's not true. We did raise it in the district court. Our letter of January 1504 was up record in the district court. It was attached as Lawler Exhibit 19 to their original motion for termination. It was attached as Lawler Exhibit 3 to their renewed motion for termination in their reply brief to the district court. Did you argue the point? Absolutely, we did. There was a hearing held on June 13, 2007 before the district court. The transcript of that hearing is not in the record. It is referred to in docket entry number 52, which is appendix page 35. And at that hearing, pages 61 and 62 of the transcript, in discussing Lawler Exhibit 19, which is the Bradley letter of January 1504, appendix 294 to 296, this is what was argued to the district court by Bradley. The other thing is, and I'll read just a couple of sentences, and I'll be happy to provide a transcript as a supplemental appendix with the court's permission because legal court is required to supplement the appendix, but it's in the docket sheet. The other thing is with this KPMG report is that it's an audit for 2001 and 2002. And even if Lawler is correct, the royalties were not paid properly for 2001 and 2002. And even if they are correct, that we should have paid on in combination, and even if we should have paid on items that were in inventory or scrapped or not invoiced or shipped, we never underpaid our royalties because when we signed that license agreement, we gave Lawler an advance royalty payment of $300,000. The advance royalty payment was not a payment that was an escrow. That could be money where they could be deducted only as it was termed the royalty payment. It was a lump sum payment that was given to Lawler at the time of signing the agreement that was just an advance payment of royalties. The amount of royalties that were due in owing were far less than the amount of the advance payment. In fact, it wasn't until 2004 that Bradley finally exceeded the amount of royalties that were due under the advance payment. So the royalties paid in 2001 and 2002 were fully paid. Lawler already had them. And what's the date of that hearing? That hearing was June 13, 2007. It was a hearing held by the district court in response to Lawler's motion for termination. It appears at its docket entry number 52 in the district court's docket sheet, which is at appendix page 35. District court doesn't seem to have used that ground as a basis for saying that there was not a valid termination, right? The district court did not cite that as the reason. But that doesn't preclude this court from relying on that as a reason to affirm the district court's decision. Well, that would be sort of bold for us to reach out. I mean, that sounds like a very highly factual question that really would require a district court. It's undisputed. It's undisputed. Lawler has never disputed that the prepayment was there. Their only challenge is that they didn't make the argument. And, in fact, we made the argument with documentary evidence in the letter of January 1504, which is of record. And we made the letter with argument to the district court at the hearing. Well, we'll have to see if they agree with you that the $300,000 covered everything and that they don't have any complaint. I have a sneaking suspicion they won't. Okay. Then let me turn to – Mr. Grossman, Mr. Turner has said that a motion to enforce the agreement in the court was a notice of termination. Right. The issue that was decided by the district court was very specific. It had to do with whether the license agreement was terminated on January 19, 2006, based on events that happened prior to that. The only events prior to that that Lawler cites are an alleged notice of default of 03 and a notice of termination in 05. And then it said to the district court, it filed a motion in February of 06, that we owe them royalties. And it attached a new auditor's report for the years 03 and 04, the report of Mr. Hamernick. We'd never seen that report until we saw it as an exhibit to their motion in the district court in February of 06. And our position is that they've asked the district court, the precise issue to the district court that was framed, it's on appendix page 5 in the district court's opinion, where it says, to the extent that Lawler contends that termination of the agreement occurred as of January 19, 2006, Lawler is incorrect. That events happening after January 19, 2006, which was Lawler's motion filed in February of 06, couldn't affect termination a month earlier. I have just one question, sort of a process question, how this worked. You referred to the $300,000 prepayment of royalties that was in the settlement agreement or the consent judgment, whatever. How did that work? So the money was paid in and then as royalties became due, Lawler drew down against that? No. The money was given to Lawler as a lump sum at the time of signing the license agreement. And it was free for Lawler to be used for the entire $300,000 was fully and freely available to Lawler. We would send quarterly royalty reports to them as to what we determined the royalty to be due. And for the first several years, up until 2004, all we sent was the report because we said the royalties due were covered by the prepayment. But the full $300,000 was available. So in other words, Bradley's contemplation was that it sent in reports and Lawler had the $300,000 to use or to draw on, if you will. And it would continue to do that, that arrangement would work until the $300,000 was used up. Correct. But Bradley didn't need to do anything, didn't have to authorize release of an escrow. The full $300,000 was fully and freely available to Lawler as of day one on the day we signed. And so our position, as we stated in January 15 of 04, and as we also argued to the district court at that hearing in June of 07, was that we couldn't have underpaid royalties for 2001 and 2002, even if the auditors were correct, because the money was there. The only issue was how much was left. Could I ask one follow-up question? I want to make sure I got your answer to Judge Lurie's earlier question about the effectiveness, either in general or specifically in this case, of a pleading that contains an assertion that there's been a default and termination, but the effectiveness of such a pleading as a matter of law, at least in the context of this agreement, to terminate. And I guess two parts. A, do you think that that's a pleading simply cannot constitute a notice of termination within the meaning of that term as used in this contract? And two, what again was the reason for saying that it didn't in this case? I think in the context of this case, under Indiana law that we cited in the brief, this pleading was not a notice of default. Of termination. Of termination, or notice of default. Okay, but I'm focusing on termination. Termination, to address the specific issue which Lawler presented in its motion to the district court, and that was the agreement was terminated as of January 19 of 06. Their notice of termination, if their pleading was indeed a notice of termination, if we accept the premise that the law would allow that pleading to serve as a notice of termination. Which they asserted shortly thereafter in a pleading in a footnote. They asserted it in a footnote, but they just said, well, in footnote two of their brief to the district court, they said, well, we raised this issue in our February pleading. But raising the issue in a February pleading doesn't do anything to affect termination a month earlier. They had to meet all the prerequisites of termination. But if they're wrong, I mean, their position is, at least now, is that if they were wrong about the December 2005 letter as being an adequate notice of termination, that all bets were off for 2005 and January 2006. But, you know, we certainly were entitled to send another letter saying, well, you know, maybe that one wasn't good enough, here's a better one. And the question is, why isn't the statement, the pleading, the legal equivalent of having sent another letter in February, let's say, saying if we were wrong in our termination letter in 2005 December was not good enough, here's one that's plenty good enough. Because I think the license agreement didn't contemplate that a pleading would serve as a letter, as a notice of termination, that the license agreement said that it had to give us written notice. Written notice, but a pleading is in writing. A pleading was in, certainly, a pleading was in writing. So what about the contract says that a, I mean, they cite the McDonald case, which certainly seems to stand for the proposition that in general a pleading is written notice. Under Illinois law, under Illinois law. But this contract is under Indiana law. Right. Is there anything in Indiana law that says that principle, which is, you seem to acknowledge, is Illinois law, is inapplicable in Indiana next door? Well, I don't think we cited anything that said that Illinois isn't applicable in Indiana, but there's nothing under the McDonald case that would establish under Indiana law, which would apply here, that that pleading would serve as a written notice. To say that Illinois law has not been shown to apply in Indiana is not the same as saying Indiana law is not the same as that in Illinois. You're not asserting the latter. Or you're asserting it, but you have no support for the latter proposition. I'm not asserting that the Illinois law is the same as it is. No, no, but you're asserting the contrary, that it's not the same. Because if you're asserting it, or at least that absent an Indiana case on point, we have to assume that they're different. I think it's correct. And there's no basis in the record to understand that they're the same. And the district court, in addressing the 06 pleading, didn't deal with the 06 pleading. It didn't deal with it as whether it was a notice of termination, because it didn't go to the issue that the district court was asked to decide, which was termination on January 19 of 06, a month earlier than the pleading was filed. Thank you, Mr. Grossman. I think we have your case. Mr. Turner will give you five minutes of rebuttal. Thank you for the additional time, Judge Lurie. I appreciate that. On the default notice, Mr. Grossman said a couple of things. One, I wanted to point out specifically on the additional communications, and Judge Bryson was on this point, he referred to sending the audit report again from KPMG again and again. What he didn't refer to was the June 21, 2004 letter, which is Appendix 355, in which Mr. Evelley, not the lawyers, this is the president of our company, saying Lawler's demand, here's the KPMG bill, Lawler's demand made in his December 22, 2003 letter to Bradley stands. Demand. Demand. And that's 8.1, and that really, I would suggest to you, makes academic the issue about whether December 22 was adequate, because it is another demand. I don't think you explicitly invoked that letter in your brief. We actually did. The second point he made was that we had waived this somehow in the reply brief. This is never an issue that had been argued before, so it comes up in their response. In our reply at page 13, we cite this letter, App 355, among two other letters, and that's at the bottom of page 13 of our reply brief. So this demand was made, this notice of default was made, preceding what Bradley did, which is continue not to pay. Okay, yeah, I see the citation. So then we go to the notice of termination, and we have the December 2005 letter, we have the February 2006 pleading, and it could not be clearer in both that there are royalty issues in play, and in addition to the McDonald's case, which I would suggest is a sensible principle, it's a bit of common sense. And what these parties did when they negotiated their agreement was provide notice of the information. What are you saying? And certainly in a 35-page brief with a large section about royalty under payments, we provided that notice at least by February, if not in the December letter. There's no question also about why Judge McKinney ruled on that point. I mean, in his opinion, he said, it is Bradley, this is a quote in pages 2 and 3, it is Bradley's position that the agreement was not terminated because Lawlor never sent Bradley a proper notice of termination, delineating the royalty discrepancy as the reason for that termination. There's really no doubt about that, no doubt about what they argued, no doubt about why he ruled in his opinion on that. What about the $300,000? Yes, as to the prepayment point. You don't agree, I take it. I don't agree, Judge. Opposing counsel. I strenuously do not agree. I take Mr. Grossman's word for it that it was mentioned during the December 2007. He read the transcript. He read the transcript. That sounds pretty convincing. And his argument was unsupported by evidence. It was an evidentiary hearing. There's a letter that is in there. It was never, I believe, connected to his argument, but it was a letter by one of his law partners, Zimmerman, who wasn't there, wasn't sworn in, wasn't a witness. We put in a letter that said, we think this is our argument position about having prepaid. There was no evidence about the amount that was prepaid. If it had been presented, we could have connected with our own evidence to show what the situation was, which was that they did make a $300,000 payment at the front end of the contract. Then the responsibility under the deal was that Bradley would calculate reports as to how much royalty it was effectively allowing us to credit against the payment. That was in Bradley's control, and it never, never allowed credit for these in combination sales under that program. Well, but it's one thing to say that you weren't getting the accounting calculation that you thought you should have been entitled to versus that you didn't have the money that was due. You had free use of the money. It wasn't in an escrow account, right, which has been drawn out? That's correct. So why is it not the case that you had already been given enough money to cover an arrearage until you exhausted the $300,000, regardless of who was accounting what in what way? Yes, two more things. One is that if one looks at the Zimmerman letter, it refers to as of September 3003, which was the quarter preceding that there was a $59,000 balance in Zimmerman's unverified view. That was before credits would have been taken against the fourth quarter of 2003. At that very time, that is when Mr. Evelley was sending his demand for how much? $27,000 in unpaid royalties and $50,000 in unpaid fees, which exceeds the $59,000. And then if we needed further proof of that, Mr. Grossman just stood here and told the court by early 2004 it was gone, so it lasted past this. His point was it lasted past December 2003? Well, then we have Mr. Evelley saying in June 2004 our demand stands. You still haven't complied. So the $300,000 had been gone months before this notice of nonpayment had been made and the $300,000 was gone. There's no evidence, but that's what the evidence would have shown if they had argued this. They did not argue it again in 08. They didn't argue it to the district court. They didn't argue it in the first appeal. Well, I wouldn't go too far in the direction of zapping them for not arguing it in 08 because they make exactly the same argument with respect to your having argued something in 06 but not argued it again in 08. I think that's the reference to the complaint argument, which you made in 06 but not in 08. We actually did make it in 08, I believe. Well, you don't cite that in your reply, but if you cite the 06. But my point is that there was never evidence put in on it and it wasn't argued again after that point. But even under their own letter, if one took Zimmerman as saying this is an officer court, we're going to listen to him, what Mr. Grossman just told you was it was depleted before we got to the middle of it. And certainly it was never paid. Last point on that, because when Bradley makes its payment after this court's judgment in the first appeal, we go back, Bradley pays $186,000 of unpaid royalties and interest. It pays $200,000 in audit fees. When it does that, it sends a letter saying we are paying royalties from 2001 forward. This is the same period that we're talking about now the argument is made was prepaid. No, it wasn't. They went back and calculated what they owed and then paid 2001 forward because they owed it in compliance with this court's judgment. Thank you, Mr. Turner. Thank you, Judge. I appreciate it.